UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

               Plaintiff,

      - against -              03 Civ 7045 (HB)

BRIGHTPOINT, INC.,
AMERICAN INTERNATIONAL GROUP, INC.,
PHILLIP BOUNSALL,
JOHN DELANEY, AND
TIMOTHY HARCHARIK,

               Defendants.

- - - - - - - - - - - - - - - - - - X

Electronically Filed
GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION TO
<u>INTERVENE AND TO STAY DISCOVERY</u>


                          TIMOTHY M. MORRISON
                          Acting United States Attorney
                          Southern District of Indiana
                          10 West Market Street
                          Suite 2100
                          Indianapolis, Indiana 46204
                          (317) 226-6333


Winfield D. Ong
Assistant U.S. Attorney
(Of Counsel)

**PRELIMINARY STATEMENT**

The government respectfully submits this memorandum of law in support of its motion to intervene in this case ("the Civil Case") and to stay discovery because of the pendency of a parallel criminal grand jury investigation (the "criminal matter") in which the defendant in this civil case, Timothy Harcharik, is a target. The same underlying facts are at issue in both the civil and the criminal matters. A stay of discovery is necessary in the Civil Case to preserve the secrecy of the ongoing grand jury proceedings. Additionally, it is necessary to prevent the broad civil discovery from circumventing the more limited discovery that will be available to defendants who have been indicted in the Criminal Case. Moreover, a stay of the discovery herein could promote judicial economy. Accordingly, the United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Fed. R. Civ. P. 24 and (2) order, pursuant to the Court's inherent power, that discovery in the instant case shall be stayed until the conclusion of the criminal matter. The U.S. Securities and Exchange Commission ("SEC") does not oppose this motion.

**FACTUAL BACKGROUND**

The Fraudulent Scheme

The civil and criminal cases both arise out of an agreement that Harcharik and others at Brightpoint, a public company headquartered in Indianapolis, Indiana, negotiated with American International Group, Inc. (AIG) in December 1998 and January 1999. The troubling circumstances surrounding the agreement have been set forth in an SEC complaint and order, *In the Matter of American International Group, Inc.*, Exchange Act Release No. 48477 (September 11, 2003) (the "Release Order"). In short, in October 1998 Brightpoint issued a press release predicting it would incur as much as $18 million in losses for the year. By December 1998, however, it recognized that it was going to lose approximately $11.9 million more. In order to bring its actual losses in line with its public announcement, Harcharik and others at Brightpoint negotiated an agreement with AIG that purported to be an insurance policy but in fact was essentially nothing more than a no-interest loan from AIG to Brightpoint because no risk was transferred from Brightpoint to AIG. Disguising the agreement as an insurance policy, however, allowed Brightpoint to claim $11.9 million in insurance proceeds for the year, while amortizing its consideration for the agreement as insurance premiums over the three year life of the agreement, thereby bringing its losses in line with its public announcement.

The falsely inflated income for 1998 was stated in
Brightpoint publicly reported the material misrepresentation
about its 1998 operating results in Brightpoint's 1998 Form 10-K,
which was filed with the SEC on March31, 1999.  Brightpoint
republished the misleading 1998 financial results in its Forms
10-K filed for 1999 and 2000.  Further, Brightpoint filed a
registration statement on Form S-8 on September 27, 1999, which
incorporated by reference Brightpoint's 1998 Form 10-K.  Delaney
signed each of these filings as vice president and chief
accounting officer of Brightpoint.  In addition, aspects of the
fraudulent accounting were included in Brightpoint's 10-Qs in
2000, and until the fraudulent nature of the agreement was
uncovered by the SEC and Brightpoint's public auditors.

As a result of the agreement, Brightpoint restated its
earnings for 1998 twice.  The first restatement assumed that the
agreement was insurance, but accounted for all of Brightpoint's
payments due under the agreement in 1998, thereby negating any
benefit from the agreement.  The second restatement did not
change the accounting significantly, but Brightpoint acknowledged
that the agreement was not insurance.

The Civil And Criminal Matters

On September 11, 2003, the SEC filed its complaint in the
civil case, however, it is counsel's understanding that no
discovery has been done.  Both the civil complaint and criminal
investigations focus on violations of the federal securities laws
by participation in the fraudulent scheme described above.   A

federal grand jury in the Southern District of Indiana is
conducting an ongoing investigation of the illegal conduct that
is the subject of the civil and criminal Cases.

## ARGUMENT

### POINT ONE

### Intervention is Appropriate

Rule 24(a) of the Federal Rules of Civil Procedure provides
that a party may intervene as of right in an action when he
"claims an interest related to the property or transaction which
is the subject of the action and the applicant is so situated
that the disposition of the action may as a practical matter
impair or impede the applicant's ability to protect that interest
. . . ." Fed. R. Civ. Proc. 24(a)(2). Rule 24(b) alternatively
permits permissive intervention "when [the] applicant's claim or
defense and the main action have a question of law or fact in
common." Fed. R. Civ. Proc. 24(b)(2). As described below,
intervention is warranted here under both Rule 24(a) and Rule
24(b).

When government prosecutors have advised courts that they
are conducting criminal prosecutions or investigations of
individuals involved in a pending civil action, the courts have
regularly permitted the government to intervene in order to
request a stay of discovery in the civil case. See, e.g., SEC v.
Chestman, 861 F.2d 49, 50 (2d Cir. 1988); SEC v. Doody, 186 F.
Supp.2d 379, 381 (S.D.N.Y. 2002); Bridgeport Harbour Place I,
LLC, 269 F. Supp.2d 6, 8 (D. Conn. 2002); SEC v. Downe, No. 92

Civ. 4092(PKL), 1993 WL 22126 at *11 (S.D.N.Y. Jan . 26, 1993);
Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009
(E.D.N.Y. 1992).  Allowing the government to intervene in this
case under Rule 24 is clearly appropriate.

Intervention is warranted as a matter of right under Rule
24(a)(2) in light of the strong interest of the government and
the public in the enforcement of criminal laws.   See, e.g.,
Cascade Natural Gas v. El Paso Natural Gas Co., 386 U.S. 129,
132-36 (1967) (permitting intervention as of right by State in
antitrust proceedings because of public interest in effective
competition); SEC v. Realty & Improvement Co., 310 U.S. 434, 458-
60 (1940) (SEC should have been permitted to intervene in
bankruptcy proceeding because resolution of that proceeding might
"defeat the public interests which [the SEC] was designated to
represent").  That interest may be substantially impaired if
discovery were allowed to continue in this matter before the
resolution of the criminal case, as we explain further in Point
II below.  Indeed, courts have specifically recognized that the
government "has a discernible interest in intervening in order to
prevent discovery in the civil case from being used to circumvent
the more limited scope of discovery in the criminal matter."
Chestman, 861 F.2d at 50; see Morris v. Amer. Fed. of State,
County and Municipal Employees, No. 99 Civ. 5125(SWK), 2001 WL
123886 at *1 (S.D.N.Y. Feb. 9, 2001)  (permitting District
Attorney to intervene in civil action to request stay of
discovery); Board of Governors of the Federal Reserve System v.

Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); First
Merchants Enterprise, Inc. v. Shannon, No. 88 Civ. 8254(CSH),
1989 WL 25214 at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing United
States Attorney to intervene in a civil action).

Intervention is also warranted as an exercise of this
Court's discretionary authority because there is substantial
overlap in the core factual allegations underlying this action
and the factual questions may well be resolved in the criminal
matter -- namely, whether Mr. Harcharik violated the securities
laws and defrauded the investing public and others.

The motion is also timely.  Mr. Harcharik has been notified
that the grand jury's investigation is substantially complete and
that the United States Attorney's Office expects to present an
indictment, if at all, to the grand jury within approximately ten
weeks, so that this motion to intervene has been filed before any
civil discovery has taken place.

Finally, the government's intervention for the limited
purpose of seeking a stay will not prejudice any party's rights.
The government seeks only a stay, and its intervention will not
alter the parties' respective positions.  In fact, the criminal
prosecution may benefit the civil parties, by bringing out facts
relevant to the civil case and streamlining the ensuing
litigation.  Accordingly, this Court should permit the government
to intervene.

## POINT TWO

### Stay of Discovery Should be Granted

District courts have the inherent authority to stay their own civil proceedings.  See Landis v. North American Co., 299 U.S. 248 (1936).

In making the determination whether to exercise its discretion to stay the discovery, the Court should balance the following considerations:

> (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; and (4) the interest of persons not parties to the civil litigation [the prosecution]; and (5) the public interest.

Twenty First Century Corp., 801 F. Supp. at 1010 (citations and quotations omitted).

As described below, all of these factors weigh in favor of granting a stay of discovery in the Civil Case until the conclusion of the criminal prosecution.

### Discussion

In this case, the possibility of prejudice to the prosecution of the target and the Grand Jury's continuing investigation, the public interest in effective enforcement of the criminal laws and the interests of judicial economy weigh heavily in favor of a stay.  The parties to this civil action will not be substantially prejudiced by the stay the Government seeks.  Indeed, it is likely that the parties will benefit from the prior resolution of the criminal case, through the

8

development and preservation of evidence and the narrowing of
factual and legal issues.

     1.  <u>Prejudice to the Government</u>.  The Grand Jury is
actively pursuing this investigation through its subpoena power
and the investigative efforts of this Office, the FBI and the
USPIS.  As in any criminal investigation, the identification of
potential Government witnesses involves continuing assessments of
the potential criminal liability of certain witnesses.  Such
assessments, which are critical to the development of the
Government's case, require the ability to obtain truthful and
complete information from person who are reluctant to speak
because they may themselves face serious penal sanctions.  This
process is facilitated by the cloak of Grand Jury secrecy, and
often involves the use of cooperation agreements or
nonprosecution agreements.

     Requiring potential Government witnesses to comply with
deposition notices, interrogatories or other discovery demands in
the civil action would seriously impede the Government's
prosecution of the criminal defendants and other potential
defendants.  <u>First</u>, such testimony would subject potential
witnesses to the risk of intimidation or subornation of perjury.
Thus, the target, having learned the identity of Government
witnesses, could attempt to use threats of economic or physical
retaliation to prevent those witnesses from testifying, or to
cause them to alter their testimony.  Even a perceived threat of
such intimidation would have a powerful chilling effect on the

Grand Jury's investigation.  See Downe, 1993 WL 22126, *13
("where a party or witness in a civil case is cooperating with a
grand jury investigation relating to the subject matter of the
civil suit, there is a compelling reason to stay discovery of the
civil case pending resolution of the criminal investigation").

Second, disclosure of the substance of potential testimony
in the criminal trial would facilitate efforts by the criminal
defendant and other targets to manufacture evidence and tailor
their defenses to the Government's proof.  For example, there is
a risk that the criminal defendant and/or other targets, armed
with deposition testimony, witness statements from the SEC's
investigative files and other discovery could coordinate their
defenses in an attempt to explain away the Government's proof.
Similarly, there is a risk that the criminal defendant could
attempt to destroy documentary or other physical evidence that
corroborates such statements.  As Chief Judge Mukasey observed
recently:

> The stakes in a criminal case are high, and
> temptations of perjury, subornation and
> intimidation are ever present.  Accordingly,
> the government is not required to turn over
> information that will permit a defendant to
> preview the government's case and tempt him
> to tailor proof to explain it away, or see to
> it that the government's proof is not
> presented.

United States v. Sindone, 2002 WL 48604, *1 (S.D.N.Y. Jan. 14,
2002) (citations omitted); See also United States v. Percevault,
490 F.2d 126, 131 (1974) ("[f]ear of intimidation of witnesses

and concern over efforts to suborn perjury were not flights of
fantasy by those who drafted Rule 16").

     <u>Third</u>, discovery of witnesses who have testified before the
Grand Jury would circumvent the secrecy of those proceedings by
allowing parties to the civil litigation to compel the disclosure
of the substance of that testimony.[1]

     2.  <u>Public Interest</u>.    The overriding public interest in
enforcement of the criminal laws weighs heavily in favor of a
stay.  The investigation involves a significant fraudulent
scheme.  In addition to the charges of securities fraud, wire
fraud and bank fraud, the Grand Jury is investigating allegations
of obstruction of justice.  Allowing the criminal case to proceed
will vindicate not only the public's interest in compliance with
the federal securities laws implicated by this civil action, but
also other interests implicated by additional criminal charges.
<u>Volmar</u>, 152 F.R.D. at 40 ("The public certainly has an interest
in the preservation of the integrity of competitive markets.
However, the criminal investigation serves to advance those same
interests."); <u>Plumbers Fund</u>, 886 F. Supp. at 1140 ("Because of
the overlapping issues in the criminal and civil cases, the
criminal prosecution will serve to advance the public interests
at stake here.").  A stay of civil discovery will not involve any
continuing harm to the public.  <u>Cf</u>. <u>SEC v. Dresser Indus.</u>, 628
F.2d 1368, 1377(D.C. Cir.), <u>cert. denied</u>, 449 U.S. 993 (1980)

---

     [1]Under Rule 6(e), Fed. R. Crim. P., a Grand Jury witness is
not forbidden from disclosing the substance of his testimony.

(denying stay on ground that is might permit "[d]issemination of false or misleading information by companies to members of the investing public").

    3.   <u>Interests of Unrepresented Parties</u> The fraudulent scheme involved in these proceedings resulted in harm to a large number of victims who are not parties to this civil action.  Any criminal convictions in this case likely will result in orders of restitution and/or forfeiture, for the benefit the victims of the scheme.  Thus, the interests of all parties as a whole would be better represented by a stay that avoids prejudice to the criminal case.

    4.   <u>Judicial Interests</u>. Allowing the criminal investigation to proceed ahead of the civil action likely will result in a narrowing of the factual and legal issues before this Court. <u>Volmar</u>, 152 F.R.D. at 40; <u>Brock v. Tolkow</u>, 109 F.R.D. at 120.  In addition, convictions may increase the likelihood of settlements by other parties to this action.  <u>Plumbers Fund</u>, 886 F. Supp at 1140.  The criminal process may create an evidentiary record that will limit the scope of subsequent discovery in the civil case, thus conserving the resources of both the parties and the Court in completing the civil discovery process and resolving any disputes that may arise out of that process.  <u>Volmar</u>, 152 F.R.D. at 41 ("availability of transcripts and other evidence from the criminal trial may eliminate altogether the need for certain depositions").  Accordingly, the interests of judicial economy are better served by the stay the Government seeks.

5.    <u>Lack of Prejudice to Civil Parties</u>.  As courts have
repeatedly held, any prejudice resulting from a stay of parallel
civil proceedings is minimized by the fact that the parties "will
have appropriate opportunity for discovery at the conclusion of
the criminal trial."  <u>SEC v. Princeton Econ. Int'l Ltd.</u>, 2000 WL
193131, *2 (citing <u>SEC v. Chestman</u>, 861 F.2d at 50).  And if the
defendant is indicted by the Grand Jury he will be provided with
discovery pursuant to the Federal Rules of Criminal Procedure.
To the extent such defendants wish to make that discovery
available to their family members or other defendants in this
action, they are not barred from doing so.  Moreover, the Grand
Jury investigation and criminal proceedings will develop an
evidentiary record and preserve that record for use in the civil
action.  <u>Plumbers Fund</u>, 886 F. Supp. at 1140 ("evidence gathered
during the criminal prosecution can later be used in the civil
action").  Accordingly, the stay requested by the Government
would not prejudice the civil litigant in this action.

<u>**CONCLUSION**</u>

    For the foregoing reasons, the government's motion to
intervene and for a stay of discovery in this civil action should
be granted.

Dated:    April 12, 2005

                          Respectfully submitted,
                          TIMOTHY M. MORRISON
                          Acting United States Attorney

                    By:   _s/_____
                          Winfield D. Ong (WO 1730)
                          Assistant U.S. Attorney
                          (Of Counsel)

13